SUMMARY ORDER

Petitioner Amed Sekou Sangare, a native and citizen of Cote d’Ivoire, seeks review of the May 20, 2008 order of the BIA affirming the May 26, 2006 decision of Immigration Judge (“IJ”) Steven R. Abrams denying his application for asylum, withholding of removal, and relief under the Convention Against Torture (“CAT”). In re Amed Sekou Sangare, No. A98 775 127 (B.I.A. May 20, 2008), aff'g No. A98 775 127 (Immig. Ct. N.Y. City May 26, 2006). We assume the parties’ familiarity with the underlying facts and procedural history of the case.
*321 When the BIA adopts the decision of the IJ and supplements that decision, we review the decision of the IJ as supplemented by the BIA. See Yan Chen v. Gonzales, 417 F.3d 268, 271 (2d Cir.2005). We review de novo questions of law and the application of law to undisputed fact. See Bah v. Mukasey, 529 F.3d 99, 110 (2d Cir.2008). We review the agency’s factual findings under the substantial evidence standard. See 8 U.S.C. § 1252(b)(4)(B); Dong Gao v. BIA, 482 F.3d 122, 126 (2d Cir.2007).
As a preliminary matter, because San-gare failed to raise his CAT claim in either his brief to the BIA or his brief to this Court, we deem that claim abandoned. See Gui Yin Liu v. INS, 508 F.3d 716, 723 n. 6 (2d Cir.2007).
Regarding Sangare’s applications for asylum and withholding of removal, although we find that substantial evidence supports the BIA’s finding that he did not experience past persecution, we nevertheless grant his petition for review for the reasons explained below.
I. PAST PERSECUTION
Substantial evidence supports the BIA’s conclusion that Sangare did not suffer past persecution. See Jin Shui Qiu v. Ashcroft, 329 F.3d 140, 149 (2d Cir.2003) (providing “that on substantial evidence review, we will ‘reverse [the BIA] only if no reasonable fact-finder could have failed to find the past persecution or fear of future persecution necessary to sustain the petitioner’s burden’ ” (citation omitted), overruled in part on other grounds by Shi Liang Lin v. U.S. Dep’t of Justice, 494 F.3d 296, 304-05 (2d Cir.2007)). Although Sangare argues that the BIA committed legal errors in its analysis of his past persecution claim, we find none where: (1) before addressing the merits of his claim, the BIA articulated the correct standard under which it would analyze the question of “persecution,” see Beskovic v. Gonzales, 467 F.3d 223, 227 (2d Cir.2006); (2) the BIA explicitly examined the context of Sangare’s beating at the hands of police, id. at 226; and (3) the BIA considered the cumulative effect of the harm Sangare experienced, Manzur v. U.S. Dep’t of Homeland Sec., 494 F.3d 281, 290 (2d Cir.2007).
What remains is Sangare’s challenge to the BIA’s ultimate conclusion that the totality of his experiences did not rise to the level of “persecution.” While we observe that a reasonable adjudicator could have found that Sangare suffered past persecution at the hands of government agents or private actors who operate with impunity, we do not agree that any reasonable adjudicator would be compelled to so conclude. See 8 U.S.C. § 1252(b)(4)(B); see also Ivanishvili v. U.S. Dep’t of Justice, 433 F.3d 332, 341 (2d Cir.2006) (“[I]f the [agency], having correctly applied the definition of persecution to the facts of this case, had determined on the basis of the whole record that petitioner’s mistreatment indeed constituted harassment, we would have no quarrel with the decision[.]”). Because substantial evidence supported the BIA’s finding that Sangare did not suffer past persecution, it correctly concluded that he was not entitled to a presumption of a well-founded fear of future persecution. See 8 C.F.R. §§ 1208.13(b)(1) (asylum), 1208.16(b)(l)(i) (withholding).
II. WELL-FOUNDED FEAR OF PERSECUTION
Notwithstanding the sufficiency of the BIA’s findings "with respect to past persecution, the BIA’s determination that San-gare failed to establish a well-founded fear of future persecution was flawed, particularly where it ignored potentially significant facts, Sangare’s arguments, and the IJ’s relevant findings. See Passi v. Muka- *322 sey, 585 F.3d 98, 101 (2d Cir.2008) (“We will ... vacate and remand for new findings if the agency’s reasoning ... was sufficiently flawed[.]”). For instance, the BIA’s finding that Sangare expressed only “a general fear of conditions in the Ivory Coast” is not supported by an examination of his asylum application, his written affidavit, his testimony, or his BIA brief, all of which make clear that he expressed a fear of persecution based on his Dioula ethnicity, which — given the nature of the ongoing violence in Cote d’Ivoire — is closely linked to his fear of persecution based on an imputed political opinion. See Toure v. Att’y Gen. of U.S., 448 F.3d 310, 320 (3d Cir.2006) (noting that “every official account of Cote d’Ivoire’s civil war ... [suggests that] the conflict chiefly stems from perceived discrimination against northerners [like the Dioula] by southern political parties”). While it is true that general unrest cannot form the basis for an asylum claim, see Melgar de Torres v. Reno, 191 F.3d 307, 314 n. 3 (2d Cir.1999), the BIA failed to appreciate that the existence of general unrest does not, per se, preclude an applicant from establishing a well-founded fear of future persecution on account of a specific protected ground.
The foregoing error led the BIA to ignore potentially significant facts that, regardless of whether Sangare suffered past persecution, were relevant to the well-founded fear analysis. The agency credited Sangare’s testimony that he was beaten on three occasions by members of a pro-government group known as Federation Estudiantine et Scolaire de Cote d’Ivoire (“FESCI”), who each time referred to his participation in a political rally in 2004 and repeatedly called him “little Dioula.” The agency similarly credited Sangare’s allegation that, after he fled Cote d’Ivoire, five or six men came to his parents’ home looking for him, telling his mother that they were not finished with him.
The BIA, however, did not explicitly consider Sangare’s allegations about the threats against him. See Sotelo-Aquije v. Slattery, 17 F.3d 33, 37 (2d Cir.1994) (finding that the BIA failed properly to analyze applicant’s fear of persecution based on multiple death threats he received). Furthermore, the BIA ignored potentially significant country conditions evidence that Sangare highlighted in his brief.[2] See Passi, 535 F.3d at 102-04 (remanding where the BIA committed a similar error concerning conditions in Congo). This evidence included an affidavit from a university professor (who is an expert on the Dioula in Cote d’Ivoire) that was prepared specifically for Sangare’s case and included an analysis of his allegations. Cf. Wei Guang Wang v. BIA, 437 F.3d 270, 274 (2d Cir.2006) (observing that the affidavit of Dr. John S. Aird was of “limited” relevance when “it was not prepared specifically for petitioner and is not particularized as to his circumstances”). While the BIA was not required to parse or refute every piece of evidence offered, see id. at 275, its incorrect statement that Sangare articulated only a fear of general violence in Cote d’Ivoire suggests that it did not consider to any extent the evidence related to the actual bases for his claims for relief. Id. (“The BIA should demonstrate that it has considered [the] evidence, even if only to dismiss it.”). This conclusion is further *323 reinforced by the BIA’s failure explicitly to consider Sangare’s argument that there exists in Cote d’Ivoire a pattern or practice of persecution of ethnic Dioula. See Mufied v. Mukasey, 508 F.3d 88 (2d Cir.2007) (remanding to the BIA when it failed to consider petitioner’s “pattern or practice” argument).
Most significantly, we note that the BIA did not consider the I J’s explicit findings— which it adopted and affirmed — that San-gare was a target of FESCI. Although the IJ found that Sangare’s fear of future persecution at the hands of FESCI was not well-founded when he could avoid future harm by relocating within Cote d’Ivoire, we need not review this finding where the BIA explicitly declined to consider it. See Song Jin Wu v. INS, 436 F.3d 157, 164 (2d Cir.2006) (noting that “[w]e take the Board’s decision as we find it, and if the reasoning it advances ... cannot support the result, we will vacate the decision.”).
In sum, while the BIA’s analysis of San-gare’s past persecution claim was adequate, this does not excuse the serious deficiencies in its well-founded fear analysis. Accordingly, we remand for the BIA to reconsider Sangare’s asylum and withholding of removal claims.
III. CONCLUSION
For the foregoing reasons, the petition for review is GRANTED, and the case is REMANDED.

. The record evidence Sangare cited — which included U.S. State Department reports — primarily concerned the threats faced by those who are perceived as sympathetic to opposition parties (such as the Dioula) from pro-government groups (such as FESCI) that operate with impunity within Cote d'Ivoire. See Aliyev v. Mukasey, 549 F.3d 111, 116 (2d Cir.2008) ("It is 'well established that private acts may be persecution if the government has proved unwilling to control [them].' " (citation omitted)).